UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MARY ALAIMO,

        Plaintiff,

    v.                                    21-CV-00370-LJV
                                            DECISION & ORDER

AETNA LIFE INSURANCE COMPANY,

        Defendant.
_____

## BACKGROUND

On January 12, 2021, the plaintiff, Mary Alaimo,[1] commenced this action in the Supreme Court of the State of New York, County of Chautaqua. Docket Item 1-2. She alleges that her late husband, Alan R. Alaimo, had a life insurance policy with the defendant, Aetna Life Insurance Company ("Aetna"),[2] and she seeks a declaration that the policy was in effect at the time of his death. *Id.* at ¶ 33. She also alleges that as Alan's beneficiary, she is owed an $82,000 death benefit and that Aetna breached its life insurance contract by refusing to pay her that benefit. *Id.* at ¶ 33-37. And she alleges that Aetna breached the implied covenant of good faith and fair dealing by

---

[1] To distinguish between the plaintiff and her late husband, Alan R. Alaimo, this decision will refer to them by their first names.

[2] In November 2017, Hartford Life and Accident Insurance Company acquired a block of Aetna's group life insurance policies, including Alan's, and "agreed to reinsure 100% of the liabilities arising under the terms of the policies." Docket Item 8 at 1 n.1. Aetna appointed Hartford Life to provide all services related to the policies. *Id.*

failing to notify Alan that Aetna had terminated Alan's life insurance policy.  *Id.* at ¶ 38-44.

On March 10, 2021, Aetna removed this action to this Court.  Docket Item 1.  A month later, Aetna moved to dismiss the complaint with prejudice, arguing that Mary failed to state a claim for which relief can be granted.  Docket Items 6, 7, 8.  On May 19, 2021, Mary responded, Docket Item 11, and on June 11, 2021, Aetna replied, Docket Item 12.

For the following reasons, Aetna's motion to dismiss is granted in part and denied in part.  Mary's state law claims are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA") and dismissed.  Nonetheless, she has stated a claim for benefits due under section 502(a)(1)(B) of ERISA, and that claim may proceed.

## **FACTUAL ALLEGATIONS**

On a motion to dismiss, the Court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff."  *Trustees of Upstate New York Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016) (citing *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 179 (2d Cir. 2014)).  "[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."  *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991).  The Court also may consider any "documents [] in [the] plaintiff['s] possession or of which [the] plaintiff[] had knowledge [of] and relied on in bringing suit."  *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) (citing *Cortec Indus.*, 949 F.2d at 47-48).  Mary's complaint

refers to several documents that the parties later included in their submissions to the Court.  Most relevant here are a November 7, 2013 letter, Docket Item 11-4; a document titled Benefit Plan Prepared Exclusively for Ralcorp Holdings, Inc. Aetna Life Insurance Booklet-Certificate ("Booklet"), Docket Item 7-1; and an October 14, 2020 copy of a June 2014 termination letter, Docket Item 7-2.  In light of this standard and these documents, the complaint tells the following story.

Alan was employed by Ralcorp Holding's, Inc. ("Ralcorp"), and, through Ralcorp, obtained life insurance coverage.  Docket Item 1-2 at ¶ 5.  Ralcorp offered group life insurance to its employees, and by virtue of that employment benefit, Alan was insured under policy # 883943 issued by Aetna ("the policy").  Docket Item 1-2 at ¶ 3.  Alan named his wife, Mary, as the sole beneficiary.  *Id.* at ¶ 6.  In September 2012, Alan became disabled and was no longer able to work.  *Id.* at ¶ 13.

After he became disabled, Alan sought continued life insurance coverage with Aetna.  The policy provided that if Alan were "disabled as the result of a serious illness or injury," he would "be eligible for a permanent and total disability extended benefit if Aetna determine[d] that [he was] permanently and totally disabled."  *Id.* at ¶ 21; Docket Item 7-1 at 11.  If approved, Alan would not have had to make any additional premium payments to maintain his life insurance coverage.  Docket Item 1-2 at ¶ 21; Docket Item 7-1 at 11.  On July 29, 2013, Ralcorp sent Alan a letter explaining that he could apply for a waiver of premium due to his disability and that if approved, his $82,000 group life insurance policy would "remain in force for as long as [he was] disabled, or until [he] reach[ed] age 65, whichever [was] earlier."  Docket Item 11-3 at 2-3.

3

Alan did just that, and on November 7, 2013, Aetna sent Alan a letter notifying him that his waiver of premium was approved, that his loss fell within the permanent and total disability coverage of Aetna's policy, and that his life insurance coverage would be continued, effective as of March 28, 2013.  Docket Item 1-2 at ¶¶ 8,10; Docket Item 11-4 at 2.  The letter stated that Alan's "[b]enefits [would] continue, without payment of premiums, in accordance with the provisions of the [p]olicy" and would end when Alan turned 65 years old on December 23, 2021.  Docket Item 1-2 at ¶ 9; Docket Item 11-4 at 2.

But turning 65 was not the only way the life insurance policy might terminate. That same November 7, 2013 letter stated that coverage would end if "[Alan] fail[ed] to provide proof of continued permanent and total disability as indicated" in the letter. Docket Item 11-4 at 2.  Aetna's letter explained the process: Aetna would "notify [Alan] periodically to submit a completed [a]ttending [p]hysician's [s]tatement or request that [Alan] self-certify that [his] permanent and total disability continue[d]."  *Id.*  If he did not provide this information within 31 days after he received such a request, Aetna would terminate his life insurance policy.  *Id.*

The Booklet similarly explained the extension process. The life insurance extended benefit would terminate if Aetna sent a request for "an exam or proof that [the participant was] still permanently and totally disabled[] and [he did] not go for the exam or provide proof of [] continued disability within 31 days of that date."  Docket Item 7-1 at 12.  The Booklet further noted that if a participant's insurance "was extended continuously for [two] years, Aetna [would] not require an exam or proof [of continued disability] more than once in a [twelve-]month period."  *Id.*

4

Alan passed away on July 29, 2019, and Mary sought the death benefit of $82,000 under Alan's life insurance policy.  Docket Item 1-2 at ¶ 12.  But Aetna denied the claim and, on October 14, 2020, provided Mary a copy of a June 25, 2014 letter ("termination letter") from Aetna advising Alan that his life insurance coverage had been terminated because he was no longer permanently and totally disabled.  *Id.* at ¶ 24; Docket Item 7-2 at 2-3.  Mary claims that neither she nor Alan ever received the June 24, 2014 termination letter and that the policy remained in effect when Alan died.  Docket Item 1-2 at ¶¶ 12, 24, 26-27.

## **LEGAL STANDARD**

To survive a motion to dismiss, a complaint must include sufficient factual matter, accepted as true, "to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  "Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint."  *Conn. Gen. Life Ins. Co. v. BioHealth Labs, Inc.*, 988 F.3d 127, 131-32 (2d Cir. 2021).

**DISCUSSION**

**I.      PREEMPTION OF MARY'S STATE LAW CLAIMS BY ERISA**

Aetna argues that Mary's claims are preempted by ERISA.  Docket Item 8 at 11.  This Court agrees.  ERISA is a comprehensive statute that governs "employee welfare benefit plan[s]," which include:

> any plan, fund, or program . . . established or maintained by an employer . . . to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise[] . . . benefits in the event of . . . death[.]

29 U.S.C. § 1002(1).

ERISA also contains an express preemption clause: ERISA "supersede[s] any and all [s]tate laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA.[3]  29 U.S.C. § 1144(a).  "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan."  *Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 114 (2d Cir. 2008) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983)).  ERISA preempts not only "state laws specifically designed to affect employee benefit plans," *Shaw*, 463 U.S. at 98, but also preempts state common law claims "that seek 'to rectify a wrongful denial of benefits promised under ERISA-regulated plans,'" *Paneccasio*, 532 F.3d at 114 (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 214 (2004)).

---

[3] The ERISA preemption clause is subject to exceptions in 29 U.S.C. § 1144(b) and 29 U.S.C. § 1144(d), but neither applies here.  *See Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 62 (1987).

Alan's life insurance policy was part of an employee welfare benefit plan. Ralcorp provided its employees, including Alan, with a life insurance plan through a group policy issued by Aetna. Docket Item 1-2 at ¶¶ 3-5. The plan would provide benefits in the event of death. Thus, ERISA governs the life insurance plan, and, accordingly, its preemption clause applies to Mary's claims if they "relate to" the life insurance plan.

Mary asserts state law claims for declaratory judgment, breach of insurance contract, and breach of the covenant of good faith and fair dealing. Docket Item 1-2 at ¶¶ 17-44. Each of those claims is premised on a dispute about whether Alan's life insurance plan was terminated and seeks a benefit that is allegedly payable under a covered plan—the life insurance plan. Therefore, each of Mary's claims "relates to" a covered plan and is preempted by ERISA. *See Paneccasio*, 532 F.3d at 114 (finding that ERISA preempted retiree's breach of contract, bad faith, and various other state common law claims and that each claim "related to" deferred compensation—a benefit plan—because each claim was premised on the plan's termination and denial of benefits, referred to the plan, and would require reference to the plan to calculate any recovery).

Mary argues that Aetna's failure to comply with ERISA "raises questions of fact and law [about] whether [the] defendant is able to rely on upon ERISA" and whether Aetna's failures "permit[] [the] plaintiff to assert state law causes of action." Docket Item 11 at 5, 8. But that is not how ERISA works. "The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans." *Aetna Health Inc.*, 542 U.S. at 208. It "set[s] out substantive regulatory requirements for employee benefit plans" and,

7

when administrators and fiduciaries fail to meet ERISA's requirements, also "provide[s] for appropriate remedies, sanctions, and ready access to the [f]ederal courts." *Id.* (quoting 29 U.S.C. § 1001(b)).

More specifically, ERISA's integrated enforcement scheme includes section 502(a), 29 U.S.C. § 1132(a), which permits a plan participant or beneficiary to file suit "to recover benefits due under the plan, to enforce the participant's rights under the plan, or to clarify rights to future benefits," as well as "to bring a cause of action for breach of fiduciary duty." *Pilot Life Ins. Co. v. Dedaux*, 481 U.S. 41, 53 (1987) (citing 29 U.S.C. § 1132(a)). And section 502(a)'s "carefully integrated civil enforcement provisions . . . provide strong evidence that Congress did not intend to authorize remedies that it simply forgot to incorporate expressly." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985). Thus, ERISA applies to benefit plans regardless of whether the defendant complied with ERISA; in fact, ERISA contemplates and provides a mechanism for claims when parties fail to comply with it. Because ERISA governs the life insurance plan, Mary's state law claims are preempted by ERISA.[4]

---

[4] Mary also argues that the Booklet's statement that "[i]f you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or federal court" means that Mary "had the right to file [her] complaint in state courts." Docket Item 11 at 9. To the extent Mary is arguing that her state law claims are not preempted because of this statement, that argument is misplaced. State and federal courts have concurrent jurisdiction over ERISA claims*, see* 29 U.S.C. § 1132(e)(1) (providing for concurrent jurisdiction over claims for benefits under section 502(a)(1)(B)), so the right to sue in state court does not imply the right to bring a claim under state law. What is more, the Booklet's language is mandated by ERISA and its regulations. *See* 29 U.S.C. §§ 1022(b) & 1024(c); 29 C.F.R. § 2520.102–3(t)(2). ERISA requires employers to provide employees with summary plan descriptions of benefits ("SPDs"), such as the Booklet. 29 U.S.C. § 1022(b). Those regulations include "General Reporting and Disclosure Requirements," 29 C.F.R. § 2520.102–1 *et seq.*, and SPDs are deemed to comply with federal law if they include, among other things*,* the following notice: "If you have a claim for benefits which is denied or ignored, in whole or

## II.  SECTION 502(A)(1)(B) ERISA CLAIM

Mary argues that even if her state law claims are preempted by ERISA, she effectively pleaded ERISA claims and, therefore, her complaint should survive.  Docket Item 11 at 9.  Aetna, in turn, argues that Mary's complaint should be dismissed with prejudice because (1) any ERISA claims are barred by the statute of limitations and (2) Mary failed to exhaust her administrative remedies.  Docket Item 8 at 5.

### A.  Mary's Effective Pleading of a Section 502(a)(1)(B) ERISA Claim

Federal courts disagree about whether a preempted state law breach of contract claim should be dismissed without prejudice or treated as a claim under ERISA.  *Harrison v. Metro. Life Ins. Co.*, 417 F. Supp. 2d 424, 434 (S.D.N.Y. 2006) (citing *Fanney v. Trigon Ins. Co.*, 11 F. Supp. 2d, 829, 832 (E.D. Va. 1998) (noting disagreement among courts regarding whether state law claims preempted by ERISA should be treated as claims under ERISA)).  Several courts in the Second Circuit have concluded that when a complaint characterizes a claim as a state law breach of contract but also includes allegations sufficient to support a claim under section 502(a)(1)(B) of ERISA, the court should treat the claim as one under ERISA rather than dismiss it.  *See e.g., id.* at 434-45; *Hills v. Praxair, Inc.*, 2012 WL 1935207, at *17 (W.D.N.Y. May 29, 2012); *Arthurs v. Metro. Life Ins. Co.*, 760 F.Supp. 1095, 1098 (S.D.N.Y.1991).  "[This] approach is consistent with the Second Circuit's holding that a pleading is sufficient

---

in part, you may file suit in a state or [f]ederal court."  29 C.F.R. § 2520.102–3(t)(2).  Certainly, this statutorily required disclosure cannot be read to undo ERISA's broad preemption provision.  *Cf. Cruthis v. Metro. Life Ins. Co.*, 356 F.3d 816, 818 (7th Cir. 2004) (holding "that the phrase, 'you may file suit in a state or federal court' is a statutorily mandated disclosure of an employee's ERISA rights rather than a forum selection clause").

9

where it sets forth the factual allegations supporting the elements of a claim, even if it fails to identify the specific law under which it brings a claim." *Harrison*, 417 F. Supp. 2d at 434 (citing *Marbury Mgmt., Inc. v. Kohn,* 629 F.2d 705, 712 n.4 (2d Cir. 1980)). And it "promotes the interests of justice and sound judicial administration." *Id.*

As explained above, *see supra* at 7-8, section 502(a)(1)(B) of ERISA enables a beneficiary to recover benefits due under a plan. 29 U.S.C. § 1132(a)(1)(B). "To prevail under [section] 502, a plaintiff must show that (1) the plan is covered by ERISA, (2) [the] plaintiff is a participant or beneficiary of the plan, and (3) [the] plaintiff was wrongfully denied [a benefit] owed under the plan." *Giordano v. Thomson,* 564 F.3d 163, 168 (2d Cir. 2009) (citations omitted). Here, Mary alleges the elements of a claim under section 502(a)(1)(B). She alleges that she was a beneficiary under an ERISA plan,[5] Docket Item 1-2 at ¶¶ 6, 35, and that she did not receive a benefit due to her under the plan, *id.* at ¶¶ 15-16, 35-37. Therefore, although Mary does not expressly characterize her claim for a death benefit as arising under ERISA, by assuming Mary's factual allegations to be true and drawing all reasonable inferences in her favor, *see supra* at 2, the Court construes her complaint to assert a claim under section 502(a)(1)(B). *See Harrison*, 417 F. Supp. 2d at 434-35.

---

[5] Because the defendant concedes—indeed, explicitly argues—that the plan was covered by ERISA, the Court deems the complaint amended to include that allegation.

B.     The Timeliness of Mary's Section 502(a)(1)(B) ERISA Claim

Anticipating an ERISA claim, Aetna argues that any claim under section 502(a)(1)(B) still should be dismissed with prejudice because the statute of limitations bars it. Docket Item 8 at 5. This Court disagrees—at least at this stage of the case.

ERISA does not provide a statute of limitations for actions under section 502(a); therefore, the limitations period for the "most nearly analogous state limitations statute" applies. *Miles v. N.Y. State Teamsters Conf. Pension & Ret. Fund Emp. Pension Benefit Plan*, 698 F.2d 593, 598 (2d Cir. 1983). Here, that is New York's six-year limitation period for contract actions. *Id*. So Mary's claim must have accrued within six years of the date that her complaint was filed—that is, January 12, 2021, *see* Docket Item 1-2.

"[A] plaintiff's cause of action under ERISA accrues when a plan clearly and unequivocally repudiates the plaintiff's claim for benefits and that repudiation is known, or should be known, to the plaintiff." *Carey v. Int'l Brotherhood of Elec. Workers Local 363 Pension Plan*, 201 F.3d 44, 50 (2d Cir. 1999). In other words, accrual may be "triggered by either actual knowledge or constructive knowledge of a clear repudiation." *Id.* at 48 n.4.

Aetna contends that the June 25, 2014 termination letter was a "clear repudiation" of Alan's participation in the life insurance plan, and that any suit challenging the termination of benefits commenced after June 24, 2020, therefore was untimely. Docket Item 8 at 6, 15. What is more, Aetna argues, Mary's assertion that neither she nor Alan ever received the termination letter does not matter: ERISA does not require a plan to verify that participants *receive* notices; rather, ERISA permits

11

notices "distributed through the mail [to] be sent by first, second, or third-class mail." Docket Item 12 at 6-7 (quoting 29 C.F.R. § 2520.104b-1(b)(1)).

Aetna is correct that ERISA's regulations do not require a plan to verify that participants actually receive documents. Instead, ERISA regulations require the "use [of] measures *reasonably calculated* to ensure actual receipt of the material by plan participants and beneficiaries." 29 C.F.R. § 2520.104b–1(b) (emphasis added). And ERISA explicitly states that first-class mail is not always required:

> Material distributed through the mail may be sent by first, second, or third-class mail. However, distribution by second or third-class mail is acceptable only if return and forwarding postage is guaranteed and address correction is requested. Any material sent by second or third-class mail which is returned with an address correction shall be sent again by first-class mail or personally delivered to the participant at his or her worksite.

29 C.F.R. § 2520.104b–1(b).

But Aetna's argument still is misplaced because it assumes the truth of a disputed fact: whether the termination letter was actually sent on June 25, 2014. Docket Item 1-2 at ¶¶ 24-27; Docket Item 11 at 12. The Court has considered the *contents* of the June 2014 termination letter because Mary incorporated it by reference in her complaint. *See supra* at 2-3. But on this motion to dismiss, the letter cannot be considered for the proposition that it was sent on the date it bears.[6] *See Simeon v.*

---

[6] Aetna cites two cases in support of its argument "that a claimant cannot make out an ERISA claim by alleging non-receipt of a properly provided notice." Docket Item 12 at 7. But in each of those cases, the court addressed a motion for summary judgment, not a motion to dismiss, and dealt with whether plan modifications applied to a plaintiff who claimed not to have been given notice of the modifications. In *Aiello v. Midwest Operating Engineers Health & Welfare Fund*, 1993 WL 81437 at *3 (N.D. Ill. Mar. 19, 1993), the Court held that the defendant's single negligent failure to provide notice of a plan amendment—a procedural violation—had no substantive remedy. In *Heil v. Midwest Operating Engineers Health & Welfare Fund*, 1993 WL 226303 at *5 (N.D. Ill. June 24, 1993), the Court found that the plaintiff had not established that the

*Mount Sinai Med. Ctr.*, 150 F. Supp. 2d 598, 603 (S.D.N.Y. 2001) ("The plaintiff alleges in the complaint that she never received any letter about the [p]lan, and she certainly did not rely upon such a letter as a basis for bringing her complaint.").

In her complaint, Mary alleges that she did not see the termination letter until October 2020; that neither she nor Alan knew about the letter before October 2020; and that she and Alan were diligent in preserving Alan's disability claims under the policy. Docket Item 1-2 at ¶¶ 24-28.  At some point, the defendant may show that it indeed sent the letter on June 25, 2014.  But at this stage, the Court must assume that Mary's factual allegations are true and draw all reasonable inferences in her favor.  *See supra* at 2.  Thus, at least for now, the June 25, 2014 termination letter was not a clear repudiation of Alan's participation in the life insurance plan that triggered the limitations period.

Aetna also argues that even if Alan did not receive the June 2014 termination letter in 2014, this failure was of no moment because, under the circumstances, Alan could not have reasonably believed that his life insurance coverage was still in effect at the time of his death.  Docket Item 12 at 7-8.  More specifically, Aetna argues that five years of silence—that is, from June 2014 until July 2019 when Alan died— with no communication or request from Aetna should have alerted Alan that his coverage had lapsed.  *Id.*  Aetna notes that the Booklet (1) explains how a participant's coverage

---

defendant's notification procedures violated ERISA; on the contrary, the Court found that the defendant provided sufficient evidence that it sent notice of the modification according to its usual practice and procedures.  *Id.*  Here, Mary's claim focuses on a termination letter and an appeal of the denial of benefits, not whether a plan modification applies.  And at this stage, Aetna has not established that it mailed the termination letter.

would end if the participant failed to respond to Aetna's requests for an exam or for proof of continued disability and (2) promises that Aetna would not require such proof more than once a year after two years of continuous extension of benefits, *see* Docket Item 7-1 at 12; therefore, Aetna argues, five years of silence certainly should have alerted Alan and Mary that something was wrong, Docket Item 12 at 7-8.

But that analysis is logically faulty. Five years of silence would have ended five years after Aetna last communicated with Alan about his disability. Because Aetna approved the disability claim in November 2013, five years of silence would not have occurred until November 2018, and that presumes that Aetna did not contact Alan after that date. Mary filed her complaint on January 12, 2021. Docket Item 1-2. So even if five years of silence meant that something was wrong, Mary's complaint was filed just about two years—or less—after that silence indicated something was wrong.

What is more, the November 2013 approval letter, like the Booklet, indicated that Aetna might periodically request an exam or self-certification of Alan's continued disability, Docket Item 11-4 at 2, but neither the letter nor the Booklet provided a schedule for Aetna's requests*, id.*  Indeed, the Booklet noted Aetna would not require an exam or proof more than once a year after two years of continuous extension of coverage, but it did not say how often Aetna would request an exam or proof. Docket Item 7-1 at 12. In other words, the Booklet set a ceiling for Aetna's requests, but it did not provide a floor. Perhaps Alan and Mary were unreasonable in believing that Alan's coverage continued despite months of silence; perhaps they were not. But one thing is certain: this Court cannot settle this factual dispute on a motion to dismiss.

For all those reasons, it does not appear from the face of the complaint that Mary's section 502(a)(1)(B) claim is barred by the statute of limitations. Therefore, the Court will not dismiss Mary's section 502(a)(1)(B) claim on that ground.

### C. Exhaustion of Administrative Remedies

Aetna also argues that Mary's claims should be dismissed with prejudice because she failed to exhaust her administrative remedies and cannot correct this failure. Docket Item 8 at 12-14.

Under ERISA, plans must "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied" and "afford a reasonable opportunity to any participant . . . for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133(1)–(2). Although ERISA itself contains no statutory exhaustion requirement, the Second Circuit has recognized a "firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases."[7] *Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993) (quoting *Alfarone v. Bernie Wolff Constr.,* 788 F.2d 76, 79 (2d Cir.1986)).

---

[7] After observing that it "ha[d] been somewhat casual when discussing the judicially-created exhaustion requirements under section 502(a)(1)(B)," *Paese v. Hartford Life & Acc. Ins. Co.*, 449 F.3d 435, 443 (2d Cir. 2006), the Second Circuit held that the "failure to exhaust ERISA administrative remedies is not jurisdictional[] but is an affirmative defense," *id.* at 446. Nevertheless, "courts routinely dismiss ERISA claims brought under [s]ection 502(a)(1)(B) on a 12(b)(6) motion to dismiss where the plaintiff fails to plausibly allege exhaustion of remedies." *Benson v. Tiffany & Co.*, 2021 WL 1864035, at *6 (S.D.N.Y. May 10, 2021) (quoting *Abe* v. *N.Y. Univ.*, 2016 WL 1275661, at *5 (S.D.N.Y. Mar. 30, 2016) (collecting cases)).

A court may excuse a plaintiff's failure to exhaust when the plaintiff "make[s] a clear and positive showing that pursuing available administrative remedies would be futile." *Id.* at 594.  For example, a fiduciary's failure to timely respond to a request for review of a benefit determination or to inform a claimant of the appeals process both demonstrate futility.  *Medoy v. Warnaco Employees' Long Term Disability Ins. Plan*, 43 F. Supp. 2d 303, 308-09 (E.D.N.Y. 1999).  In addition, ERISA's regulations provide that a plaintiff "'shall be deemed to have exhausted' her administrative remedies if a plan fails to establish or follow claims procedures in compliance with ERISA."  *McFarlane v. First Unum Life Ins. Co.*, 274 F. Supp. 3d 150, 155 (S.D.N.Y. 2017) (quoting 29 C.F.R. § 2560.503-1(l)(1)).

Aetna contends that after the adverse determination in the June 2014 letter, Mary was required to exhaust administrative remedies before filing suit.  Docket Item 8 at 13-14.  But that argument again assumes the same critical fact that Mary disputes: that Aetna sent the termination letter on June 25, 2014.  And for that reason, each of the cases Aetna cites in support of its argument is inapposite.  In each case, either the parties did not dispute the timely notification of a denial of benefits or the plaintiff failed to provide good reason for failing to exhaust.  *See Diamond v. Local Mgmt. Pension Fund*, 595 F. App'x 22, 23 (2d Cir. 2014) ("[The plaintiff] initially appealed his benefit suspension . . . , but he later withdrew the appeal intending, as he explained, to 'seek reinstatement of his pension benefit in [f]ederal [c]ourt without exhausting the administrative appeal process.'"); *Saladin v. Prudential Ins. Co. of Am.*, 337 F. App'x 78, 79 (2d Cir. 2009) (affirming summary judgment in favor of the defendant because the defendant notified the plaintiff of the basis of its denial and informed her how to appeal);

*Abe v. N.Y. Univ.*, 2016 WL 1275661, at *5 (S.D.N.Y. Mar. 30, 2016) (Although "courts may waive the exhaustion requirement if a plaintiff makes a clear and positive showing that pursuing available administrative remedies would be futile, [the p]laintiff has pleaded no facts to show that rejection of [his appeal] . . . would be a foregone conclusion.") (citations and quotation marks omitted); *Wegmann v. Young Adult Inst., Inc.*, 2016 WL 827780, at *2 (S.D.N.Y. Mar. 2, 2016) ("After [the p]laintiff resigned from her employment . . ., [the p]laintiff applied for and was denied benefits under the [p]lan.").

Here, in contrast, Mary asserts that she and Alan were unaware that Alan's life insurance was terminated on June 25, 2014; she says that they never received notice of the termination; she therefore reasons that they could not have sought administrative review of the decision. Docket Item 11 at 11. "Because the exhaustion requirement rests on the assumption that notice of denial has been provided, a fiduciary who has not provided [such] notice . . . is foreclosed from insisting upon exhaustion of administrative remedies." *Negron v. Cigna Health & Life Ins.*, 300 F. Supp. 3d 341, 353–54 (D. Conn. 2018) (quoting *Corsini v. United Healthcare Corp.*, 965 F. Supp. 265, 269 (D.R.I. 1997)). Accepting the plaintiff's allegations as true and drawing all reasonable inferences in her favor, as this Court must, *see supra* at 2, the Court declines to dismiss Mary's section 502(a)(1)(B) claim based on her alleged failure to exhaust.

### III.  FAILURE TO PROVIDE PLAN DOCUMENTS

Mary argues that Aetna's failure to provide plan documents raises a claim under section 1133 of ERISA. Docket Item 11 at 8-10. She alleges that she requested the life insurance policy and other documents from Aetna but that Aetna failed to provide them.

*Id.*  According to the Booklet, she says, a participant has a right under ERISA to "[e]xamine, without charge . . . all documents governing the [p]lan, including insurance contracts."  *Id.* at 9.  And she argues that she therefore has a separate claim against Aetna.  *Id.*

Under section 104(b)(4) of ERISA, a plan "administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated."  29 U.S.C. § 1024(b)(4).  And a plan administrator who fails to furnish the requested material "within 30 days after such request may in the court's discretion be personally liable to such a participant or beneficiary in the amount of up to $100 a day."  ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1).  But Mary's claim fails here because Ralcorp, not Aetna, was the plan administrator.

The obligation to provide information under sections 101 and 104 of ERISA "is placed on the person designated under ERISA as the 'administrator' of the plan, not on every fiduciary."  *Lee v. Burkhart*, 991 F.2d 1004, 1010 (2d Cir. 1993).  ERISA defines administrator as "the person specifically so designated" by the plan, the plan sponsor, or, if no "administrator [] is designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe."  29 U.S.C. § 1002(16)(A).  Here, the Booklet explicitly designates Ralcorp—not Aetna—as the plan administrator; moreover, it notes that in preparing the Booklet, Aetna was "acting on behalf of your [p]lan [a]dministrator who remains responsible for complying with ERISA reporting rules and regulations on a timely and accurate basis."  Docket Item 7-1 at 28.  Therefore, to

the extent that Mary attempts to state a claim against Aetna under sections 104(b)(4) and 502(c)(1), Aetna's motion to dismiss is granted because only a plan administrator, not the insurer, may be liable under this provision.  *See e.g.*, *Reid v. Local 966 Pension Fund*, 2004 WL 2072086 at *5 (S.D.N.Y. Sept. 15, 2004); *McFarlane*, 274 F. Supp. 3d at 164-65 (dismissing a claim for a violation of section 104(b)(4) where the plaintiff did not allege that the defendant was designated plan administrator or the plan sponsor).

## **CONCLUSION**

For the reasons stated above, Aetna's motion to dismiss, Docket Item 6, is GRANTED IN PART and DENIED IN PART.  Mary's state law breach of insurance contract claim is treated as a claim under section 502(a)(1)(B) of ERISA and may proceed; Mary's remaining claims are dismissed.

Aetna shall answer or otherwise respond to Mary's section 502(a)(1)(B) claim in the complaint by January 3, 2022.


SO ORDERED.

Dated:   December 15, 2021
         Buffalo, New York


       */s/ Lawrence J. Vilardo*
   LAWRENCE J. VILARDO
   UNITED STATES DISTRICT JUDGE